UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TOMMIE E. EVANS,

        Plaintiff,

v.                               Case No. 17-C-1435

NATHAN WOLF, et al.,

        Defendants.

## AMENDED SCREENING ORDER[1]

The plaintiff Tommie Evans, who is currently incarcerated at Wisconsin Secure Program Facility but was incarcerated at Waupun Correctional Institution at all times relevant to the complaint, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's motion for leave to proceed without prepaying the full filing fee.

Plaintiff is required to pay the $350.00 statutory filing fee for this action. *See* 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he can request leave to proceed *in forma pauperis*. Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $30.32. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

---

[1] This amended screening order replaces the screening order issued on November 29, 2017. ECF No. 13. It specifically authorizes service on the Waupun warden until such time as the Doe defendants can be identified. It also authorizes plaintiff to immediately begin discovery to determine the identity of the Doe defendants.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Evans alleges that on December 2, 2016, he was escorted from the Restricted Housing Unit to an interview booth for a scheduled attorney visit. In the booth, Evans was secured to the table with handcuffs. The visit lasted about ninety minutes and concluded around 2:45 pm. Upon completion, Evans immediately notified the control officer Sergeant Jane Doe that the visit was over and that he would like to be returned to his cell. Sergeant Jane Doe was assigned to the control post

2

and was responsible for monitoring movement in the Restricted Housing Unit. Evans alleges that Sergeant Jane Doe ignored his request.

The booth Evans was in did not contain a clock, but Evans believes he was remained there for approximately two hours before he began having a panic attack and feeling light-headed. Evans alleges that he began to yell and kick the door in an attempt to get the attention of the officers but his attempts were unsuccessful. Evans alleges that the heating system in the cell was faulty and in addition to his panic attack, his body temperature began to drop from the cold. Sometime around his third or fourth hour, Evans lost consciousness.

Evans was eventually awoken by Sergeant Nathan Wolf, Correctional Officer Jacob Dorn, and Correctional Officer Patrick Mahoney. During his unconsciousness, Evans had urinated on himself. He also felt extreme pain when attempting to move his right shoulder and his head. He noticed a lump on his head. Evans estimates that he was locked in the interview booth for approximately seven hours.

Evans was transported to the Health Services Unit, where he was seen by Nurse Jennifer Kacyon. Nurse Kacyon made the decision to have Evans transported to Waupun Memorial Hospital, where he was treated for injuries to his head and shoulder, as well as hypothermia. When Evans was returned to Waupun Correctional Institution, Sergeant John Doe refused Evans a shower or a meal, despite Evans still being covered in his own urine and having not eaten since earlier that morning.

Evans filed a complaint under 42 U.S.C. § 1983 and alleged that these conditions of his confinement violated his Eighth Amendment right to be free from cruel and unusual punishment. Evans alleges that Sergeant Nathan Wolf, who a supervisor in the Restricted Housing Unit, displayed deliberate indifference by failing to have Evans transferred back to his cell at a reasonable time.

3

Evans alleges that Correctional Officer Patrick Mahoney displayed deliberate indifference by failing to have Evans transferred back to his cell at a reasonable time. Evans alleges that Matthew Burns, a supervisor in the Restrictive Housing Unit, displayed deliberate indifference when he failed to notify staff of the faulty heating system in the attorney visit area. Evans alleges that Correctional Officer Jacob Dorn displayed deliberate indifference by failing to have Evans transferred back to his cell at a reasonable time. Evans alleges that Nurse Kacyon displayed deliberate indifference by failing to respond to Evans when he yelled for help. Evans alleges that Sergeant John Doe displayed deliberate indifference by refusing Evans a shower and meal upon his return to Waupun Correctional Institution. Lastly, Evans alleges that Sergeant Jane Doe showed deliberate indifference by ignoring his request to notify staff that Evans' attorney visit had ended and that he was ready to return to his cell.

To state a claim for relief under 42 U.S.C. § 1983 based on the conditions of confinement in violation of the Eight Amendment, a plaintiff must allege (1) that there was an objective showing that the conditions are sufficiently serious and (2) that there was a subjective showing of a defendant's culpable state of mind. *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017). In order for conditions to be sufficiently serious, they must be the type that deny an inmate "the minimal civilized measure of life's necessities," which created an excessive risk to the inmate's health and safety. *Id*. (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The showing of a defendant's state-of-mind is a subjective one: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). However, it has long been established that negligence, as evidenced by simple inattention or

4

inadvertence, may not form the basis for an Eighth Amendment claim. *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).

At this stage in the proceedings, accepting Evans' factual allegations as true and drawing all inferences in his favor as I must, he has stated a claim for deliberate indifference to his physical safety. It seems unlikely that leaving him in the interview room after his visit was complete would amount to deliberate indifference to serious medical needs unless Sergeant Jane Doe had actual knowledge that the conditions in the interview room put his health at risk. Indeed, because the room is described as an interview room where attorneys are allowed to meet with their clients it seems highly unlikely it would also serve as the torture chamber Evans describes. Yet, Evans alleges that Jane Doe left him in the room and failed to respond to his repeated calls for help. As a result, he claims he suffered a panic attack, became physically ill and required off-site medical attention. Though it is not clear that Jane Doe would have known of his suffering, I cannot say at this early stage that the complaint fails to state a claim against her. His allegation that he repeatedly called for help, combined with the allegation that she was assigned to the area and was in charge of monitoring movement in that section are sufficient to raise an inference that she knew. At this stage, that is enough.

Additionally, at this point in the proceedings, Evans has sufficiently stated a claim against Sergeant John Doe for denying him a shower and meal after he returned from the hospital unfed and still covered in his own urine. *See Rhodes*, 452 U.S. at 347 (explaining that conditions, either alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities, like food and sanitation). Accordingly, that claim will also proceed for now.

However, Evans has failed to allege an Eighth Amendment claim against Officers Mahoney or Dorn for failing to return him to his cell because Evans has failed to allege any facts that either officer was aware that he was in the interview booth and needed to return. Similarly, Evans' claim against Nurse Kacyon also fails. Evans allegations that Nurse Kacyon should have heard his yells and responded are insufficient to support a claim for deliberate indifference.

Evans' claims against Sergeant Wolf and Defendant Burns fail because they are based on theories of supervisory liability. Evans alleges that Sergeant Wolf was responsible for the staff in the Restricted Housing Unit and the staff failed to follow the policy to return him to his cell. Evans alleges Defendant Burns was responsible for overall operations of the Restricted Housing Unit and should have warned others that the heat was malfunctioning in the attorney interview room. However, Section 1983 does not recognize theories of supervisory liability or respondeat superior. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). Therefore, Sergeant Wolf and Defendant Burns may only be liable for his own individual wrongdoings. However, Evans has not alleged that Sergeant Wolf or Defendant Burns was individually responsible. Therefore, Evans' claims against them fail.

Lastly, the court notes that Evans seeks to bring all of his claims against the defendants in both their individual and their official capacities. The claims against the defendants in their official capacities must be dismissed. A suit against a state official in his official capacity is not a suit against the official, but rather a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the defendants are all state officials, a claim against them in their official capacity is a claim against the state. *Id*. The state is not a "person" that would be suable

under 42 U.S.C. § 1983. *Id*. at 65. Therefore, Evans cannot bring a claim against these defendants in their official capacities.

The court finds that the plaintiff may proceed on the claim of deliberate indifference against Defendants John Doe and Jane Doe in their individual capacities. Although there are no named defendants to be served, the Wisconsin Department of Justice will have notice of this suit and will be able to assist Evans as he attempts to identify the individuals who served in those roles. Additionally, the court will include Brian Foster, Warden of Waupun, as a named defendant in a limited capacity, until Evans is able to identify the Doe defendants who were personally involved. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 n.3 (7th Cir. 1996). After the entry of this order, Evans must serve discovery on Foster and the Wisconsin Department of Justice asking who the employees in those rolls were at the relevant time periods. Within 120 days of the date of this Amended Order, however, Evans should file a motion requesting to substitute the proper names of the defendants.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's claims against Defendants Wolf, Mahoney, Burns, Dorn, and Kacyon are **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that plaintiff file a motion requesting to substitute the proper names of the Doe defendants within 120 days of the date of this amended screening order.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $319.68 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with plaintiff's remaining balance to the receiving institution.

**IT IS ALSO ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If the plaintiff is no longer incarcerated at a Prisoner E-Filing Program institution, he will be required to submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

**SO ORDERED** this  6th  day of December, 2017.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court