TOMMIE E. EVANS,

        Plaintiff,

   v.                                                     Case No. 17-C-1435

JACOB R. DORN, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Tommie E. Evans, who is currently serving a state prison sentence at Wisconsin Secure Program Facility and representing himself, filed the instant 42 U.S.C. § 1983 action against Defendants Jacob R. Dorn, Andrew Moungey, Bobby Blake, Quinn Warner, and Kevin Sonntag, alleging violations of his constitutional rights. Presently before the court is Defendants' motion for summary judgment. For the following reasons, the motion will be granted and the case will be dismissed.

## BACKGROUND[1]

At all times relevant, Evans was an inmate at Waupun Correctional Institution (WCI) and housed in the Restrictive Housing Unit (RHU). Defendants Dorn and Sonntag were correctional

---

[1] Evans attempts to dispute some of Defendants' proposed facts, but each of the facts Evans challenges is supported by evidence in the record, more specifically, declarations of the defendants indicating their personal knowledge. In opposing Defendants' statements, Evans has offered no sworn declaration setting forth contrary facts or submitted evidence that supports his claim that a genuine dispute exists. Evans must do more than raise mere "metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted); *see also* Civil L.R. 56(b)(2)(B) (If a fact is disputed, the non-movant "must include a specific reference to an affidavit, declaration, or other parts of the record that supports the claim that a genuine dispute exists as to the fact stated by the moving party.").

officers stationed in RHU during second shift, Defendant Moungey was a correctional sergeant who worked third shift in RHU, Defendant Blake was a correctional sergeant, and Defendant Warner was a correctional officer in charge of pushing the canteen cart on December 2, 2016, the date of the incident.

On December 2, 2016, at approximately 1:15 p.m., an unknown officer escorted Evans to private visiting booth #9 to meet with his attorney. Booth #9 is located in RHU, down a long hallway from the main corridor and the officer's station. It is a square room that is divided in half by a wall with a thick window that runs from approximately table height to the ceiling. The inmate is seated on one side of the window and is able to communicate with the attorney, seated on the other side. There is a steel table attached to one wall, and the remaining three walls are solid brick with padding. The inmate enters the room through a steel door, which contains a small window. The correctional officer secured Evans in the room by handcuffing him to the metal table. The officer provided Evans with enough slack in the handcuff chains to allow Evans to move around a little, stand up, and reach the door with his foot. Evans was wearing a short-sleeve t-shirt, thin pants, and sandals. He claims that the vent in Booth #9 was blowing out cold air and that he suffers from a thyroid condition that makes him sensitive to cold air.

Once Evans finished communicating with his attorney, Sergeant Blake entered the attorney's side of Booth #9 to escort him out. Evans asked Blake if she would alert someone in RHU that he was ready to go back to his cell and that he was not feeling well. Blake responded that she would let someone know and left with the attorney. As Evans waited in Booth #9, he began to suffer a panic attack. He started yelling for help and kicking the door, but he did not see anybody and did not know whether any one could hear him. Eventually, he lost consciousness. Approximately four

2

hours later, Evans regained consciousness after Dorn and Sonntag discovered him in Booth #9. When the officers discovered him, Evans was laying on the floor, had a knot on his forehead, and had urinated himself. Evans also felt a lot of pain in his shoulder. The officers placed Evans in a wheelchair and escorted him to the nurse's station in RHU. At that time, Evans was provided with a dry change of clothes. Dr. Manlove ordered that Evans be transferred to the hospital for further testing and treatment and noted on the off-site service request that he had diagnosed a "seizure (first event)" with an "unknown etiology." Defs.' Proposed Findings of Fact (DPFOF) ¶ 16, Dkt. No. 48. Although Evans had a history of panic attacks, Evans had never suffered a panic attack, lost consciousness, or urinated himself at WCI prior to the December 2, 2016 incident. At the hospital, medical providers gave Evans morphine for the pain and took an x-ray. He was discharged and returned to WCI later that night.

Moungey was assigned as the Sergeant in RHU on third shift from 10:00 p.m. to 6:00 a.m. When Evans returned to WCI, he was placed in the strip cell to be searched and received clean clothes and soap. Moungey stopped by the strip cell, and Evans told him he had not eaten anything since lunch that day and asked Moungey if he could have a shower and a meal. Moungey responded that he would check with his supervisor to see what they could do. Moungey went back to the Sergeant's Office and called the lieutenant or the captain on duty, explained what Evans had told him, and asked if they could provide Evans a staff bag meal. Moungey's superior confirmed they could give Evans a staff bag meal. After Moungey spoke to his superior, he took a staff bag meal to Evans while he was in the strip cell. A short time later, Moungey collected the remains of the bag from Evans and threw it away. Moungey then escorted Evans back to his cell. Moungey did not offer Evans a shower, however, because he knew Evans had fresh clothes, soap, and hot water

3

in his cell, and given the fact that there were only three security members on staff, it would have presented a security risk to accommodate Evans' request for a shower. Evans asserts that he was not allowed to shower, did not receive a change of clothes, and was required to wear his urine-stained clothes for three days until the next shower.

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

The court allowed Evans to proceed on the following Eighth Amendment claims for deliberate indifference to Evans' physical safety: (1) defendants Blake, Warner, Dorn, and Sonntag failed to take any action to get Evans out of Booth #9 despite his yelling and (2) defendant Moungey

4

denied Evans a shower and hot meal upon his return from the hospital later that night. The court will address each claim in turn.

**A. Evans' Eighth Amendment Claim against Blake, Dorn, Sonntag, and Warner**

Conditions of confinement in a prison violate the Eighth Amendment's prohibition on cruel and unusual punishment when "(1) there is a depravation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of "the minimal civilized measure of life's necessities,"' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "An official is deliberately indifferent when he is subjectively aware of the condition or danger complained of, but consciously disregards it." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012). In other words, to defeat summary judgment, a plaintiff "must show that a factfinder reasonably could conclude that the conditions of [confinement] 'exceeded mere discomfort and were constitutionally unacceptable.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Rice*, 675 F.3d at 664–65). Prison conditions may be unconstitutionally unacceptable if they "pose a 'substantial risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). An "isolated instance of negligence temporarily inconveniencing only one inmate" does not typically implicate the Eighth Amendment. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988).

In this case, Evans' alleged deprivation, that he was shackled to a table and locked in a cold room for several hours, does not rise to the level of a constitutional violation. While unpleasant, the hardships Evans endured were temporary and not sufficiently severe enough to implicate the Eighth Amendment. *See Hernandez v. Battaglia*, 673 F. Supp. 2d 673 (N.D. Ill. 2009) (finding that

5

prison officials' conduct in handcuffing plaintiff for eight to nine hours and keeping prisoner in temperatures of up to 95 degrees for three to five hours did not constitute deliberate indifference); *cf. Henderson v. DeRobertis*, 940 F.2d 1055, 1058 (7th Cir. 1991) (finding that deprivation of blankets for four days in sub-freezing temperatures could constitute an Eighth Amendment violation); *Palmer v. Johnson*, 193 F.3d 346 (5th Cir. 1999) (finding that exposure to extreme cold for 17 hours could constitute an Eighth Amendment violation).

In addition, Evans has not established that the defendants were deliberately indifferent to the risk of harm imposed by these conditions. An inmate's claim for deliberate indifference must establish an objectively serious risk and an official's deliberate indifference to that risk. *See Farmer*, 511 U.S. at 837. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to Evans' health or safety. *Id.* at 835, 837; *see also Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent if he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred."). It is not enough to show that prison officials failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Evans must demonstrate that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the defendants actually drew that inference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Evans asserts that the cold temperatures in Booth #9 exacerbated his health condition. In this case, the defendants were not deliberately indifferent because there is no evidence that the defendants knew of Evans' health condition or suspected that keeping Evans in a cool room would exacerbate his health condition and result in a seizure. Though Evans had suffered seizures in the

past, the record shows that he had not suffered a seizure while at WCI and had not advised any of the defendants that he had a health condition. In short, Evans has not shown that these defendants "knowingly exposed [him] to a substantial danger to his health for no good reason." *Cf. Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir. 2001) (holding that jury could infer deliberate indifference where defendants knew that depriving diabetic plaintiff of insulin would endanger his health). While Evans also claims that the defendants failed to respond to his calls for help, he has not presented any evidence establishing that the defendants heard his requests. Because there is nothing in the record to show that the defendants had actual knowledge of an impending serious risk, Evans has failed to establish that the defendants acted with deliberate indifference. Accordingly, the defendants' motion for summary judgment will be granted with respect to this claim.

**B. Evans' Eighth Amendment Claim against Moungey**

Evans also asserts that Moungey violated his constitutional rights by denying Evans a shower and a meal upon his return to WCI from the hospital. As an initial matter, it is undisputed that Evans received a bagged lunch from Moungey while he was in the strip cell. In short, Evans has not shown that he suffered a constitutional violation with respect to his claim that he did not receive a meal on the night of December 2, 2016.

As to Evans' assertion that Moungey denied him a shower, the Eighth Amendment does not mandate daily showers. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316–17 (7th Cir. 1988) (noting that where a sink, towel, and soap are provided in the cell, showers need not be provided to inmates more than once per week). Moungey maintains that he did not offer Evans a shower because he knew Evans had fresh clothes, soap, and hot water in his cell, and given the fact that there were only three security members on staff, it would have presented a security risk to

accommodate Evans' request for a shower. Evans has attempted to counter the defendants' evidence with his own declaration in which he asserts that he was not allowed to shower, did not receive a change of clothes, and was required to wear his urine-stained clothes for three days until the next shower. But Evans' declaration directly contradicts his sworn deposition testimony in which he testified that he had been provided a clean change of clothes. "It is well established in this Circuit that, as a general rule, a party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony in the absence of . . . the unmistakable need to clarify prior ambiguous statements." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 n.5 (7th Cir. 2008) (citations omitted). That is not to say that a declaration or affidavit that contradicts prior testimony can never create an issue of fact, and a court should only disregard an affidavit when it involves "contradictions so clear that the only reasonable inference was that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015) (citations omitted).

In this case, Evans has not established that his declaration simply clarifies prior ambiguous statements. His deposition testimony was clear; Evans testified unequivocally that he received a clean change of clothes as well as a bar of soap after he regained consciousness. Evans offers no explanation as to why his recollection of the events submitted in his declaration in support of his civil suit should control over the sworn testimony he offered at his deposition. In the absence of any explanation for the contradiction, I conclude that Evans' declaration is entitled to no weight and does not preclude the entry of summary judgment in favor of Moungey on this claim. The record demonstrates that Evans received clean clothes and soap and had access to hot water; therefore, it was not improper for Moungey to deny Evans a shower when he returned from the hospital. Evans

has failed to establish that Moungey violated his constitutional rights. Accordingly, the defendants' motion for summary judgment will be granted with respect to this claim.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 46) is **GRANTED** and the case is dismissed. The clerk is directed to enter judgment accordingly.

**SO ORDERED** this __24th__ day of June, 2019.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court